ELIZABETH THOMAS, and others, Terre-Tenants of HENRY W. THOMAS, and others *vs.* THE PRESIDENT, DIRECTORS AND COMPANY OF THE FARMERS' BANK OF MARYLAND.

*Construction of Act of 1865, ch. 144—Pleading—Misnomer— National Banks—Constitutional Law—Parties to suits in Equity—Parol proof to explain a record—Scire Facias against Terre-Tenants—Sheriff's return.*

If the existence of a person or corporation suing be denied, the plea is in bar.

National banks, as Federal agencies, are only exempted from State legislation so far as it may impair their efficiency in performing the functions by which they are designed to serve the government of the United States. It is only when a State law incapacitates them from discharging these duties that it becomes unconstitutional.

The Farmers' Bank of Maryland recovered judgment in 1864, against T. and others. The Act of 1865, ch. 144, authorized the State banking institutions to become banking associations under the laws of the United States, and provided for the surrender and extinction of their State charter, with a *proviso,* "that said bank, etc. may continue to use its corporate name for the purpose of protecting and defending suits instituted by or against it, and of enabling it to close its affairs, but not for the purpose of continuing under the laws of this State its business," etc. In pursuance of this Act and of the Act of Congress of June 3rd, 1864, which provides that the national banks, organized thereunder shall have a corporate name by which they shall sue, etc., the Farmers' Bank of Md., in June, 1865, was converted into the Farmers' National Bank of Annapolis, and in May, 1874, under its original corporate name, it sued out a *scire facias* on the above judgment against the original defendants and certain terre-tenants. HELD:

1st. That the Act of 1865, ch. 144, simply confers a privilege and is not in conflict with the Act of Congress.

2nd. That the *scire facias* could issue in the name of the Farmers' Bank of Maryland.

Thomas, *et al. vs.* Farmers' Bank of Maryland.

3rd. That the Farmers' National Bank of Annapolis is the substantial plaintiff, and in case of judgment for defendants would be liable for costs.

In the case of a general creditors' suit, or where there is a fund in Court and an order requiring creditors to come in to participate in the distribution, the simple fact that a party appears and files his claim, raises the presumption, that he intends to make himself a party to the record.

Where a suit is instituted, not for the benefit of creditors generally, but for the enforcement of some special right, as for the foreclosure of a mortgage or the enforcement of a vendor's lien, and a third person desires to come in and be made a party, he should, by some appropriate allegation, make known the nature and character of his right. In the absence of such allegation or statement of record, the mere fact that a short copy of a judgment in favor of a third person was found filed, with other judgments, in such an equity cause is not binding and conclusive record evidence that such person became a party thereto. And in such case, parol proof that the copy of the judgment was filed without proper authority is admissible.

The plaintiff, in a special *scire facias* against terre-tenants must name all the tenants holding lands subject to the lien of the judgment; if he omit to do so, those who are named may plead in abatement.

A *scire facias* against terre-tenants is, so far as they are concerned, a proceeding strictly *in rem*, and it is essential that the land to be affected by the judgment should be properly described.

Whether a *scire facias* against terre-tenants be general or special, the particular lands of which they are tenants, remaining subject to the judgment lien, must be described in the sheriff's return; and in case of judgment the *fieri facias* that issues upon it must give a sufficient description of it to enable the sheriff to levy upon it.

Where a *scire facias* was issued against three terre-tenants of T., and one of the defendants' pleas alleged that a part of the land of T. was purchased by each of two of the tenants named, under a decree for the enforcement of a vendor's lien, which was prior to the rendition of the judgment recited in the *scire facias*. HELD:

That no identity or sufficient description of the land can be derived from such allegation.

Where, in a *scire facias* against terre-tenants, there is no sufficient description of the lands appearing of record, either by the sheriff's return or in the pleadings, the Court cannot resort to the evidence offered to the jury for the purpose of obtaining a description of the lands against which to render the judgment.

APPEAL from the Circuit Court for St. Mary's County.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., STEWART, GRASON and ALVEY, J.

*Frederick Stone* and *J. Shaaff Stockett,* for the appellant.

The Act of Congress creating the National Banks was a valid exercise of power; they derive all their rights from the National Legislature, and the State Legislatures can neither add to nor subtract from these rights. *Farmers' Natl. Bank vs. Deasing,* 91 *S. C. Rep.,* 29.

We must, therefore, look exclusively to the Acts of Congress establishing National Banks, to ascertain their rights, powers and privileges. It would certainly be an anomaly, for a corporation to derive part of the powers necessary for its corporate existence from one Government, and part from another. The right to sue and be sued is a right essential to the existence of every corporation, and the laws of the State of Maryland can no more extend, or restrict or change the powers of the National Banks in this respect than in any other.

If the Legislature had the power to authorize a dead corporation to sue, it must equally have the power to authorize it to be sued.—The insurmountable difficulties in the latter case are apparent at a glance. The liabilities equally with the rights are transferred by operation of law. How are we to recover our costs in this case, should the Court adjudge them to us, if the National Bank should refuse to pay them? Would it not be a flat answer to our demand for them to say that they were not a party to the suit?

There are cases where, upon the expiration of a charter, the Legislature has the undoubted right to extend some of

their corporate powers for the special purpose of allowing the corporation to close its affairs. But the State can exercise such power only over a corporation over which it has exclusive control.

It could not prevent the Farmers' Bank of Maryland from becoming a National Bank. The consent of the State thereto was not at all necessary. The Act of 1865, chap. 144, seems to have been passed merely out of abundant caution. Besides, nine years elapsed after that Act was passed, before the writ in this case was issued.

The only extension of the corporate name contemplated by the Act, was time enough to close the business and no longer. The Legislature never intended an indefinite period. The suits mentioned only mean the suits then pending, and can never be construed to mean all suits for all time that might thereafter be brought.

There is no clearer principle enunciated in every text-book upon evidence, than that parol testimony is not admissible to contradict, add to, or vary a record. The record must speak for itself, and no witness will be heard to speak for it.

This Court has already said in this case, (37 *Md.*, 257,) " It will be sufficient if it appear from the record, that he has appeared to the suit and filed his claim," &c.

The plaintiff himself offered in evidence the record for a particular purpose, and upon the defendants relying upon the same record to prove another fact, the Court below permitted him to offer parol evidence to contradict or explain that record in a particular part thereof. The plaintiff may have well asked the Court to instruct the jury as to the true construction of that record, but he was not authorized to attempt to falsify it by parol evidence. He cannot offer a record to prove one fact, and then attempt by parol to nullify another fact disclosed by the same record. *State, use of Sprigg vs. Jones,* 8 *Md.*, 95 ; *Tabler vs. Castle,* 22 *Md.,* 94, 101; *Ranoul vs. Griffie,* 3 *Md.*, 54.

We by no means say that a party is bound by a record to which he was not a party. If the record avers that he was a party thereto, when in fact he was not, the record so far must be tainted with fraud or mistake. The right of the party by a proper proceeding *in equity* to correct this fraud or mistake is unquestioned.

A judgment is necessarily based upon the record in the case in which the judgment is rendered. Judgments are not founded on the evidence in the case, but entirely upon the pleading and verdict. The verdict itself must be based on pleading.

The proceedings in *scire facias* against a *terre-tenant* is a proceeding *in rem.* The whole object of the suit is to make certain lands in the hands of the alienee of the original debtor liable for the debt. The alienee himself is not personally liable for the debt. The material facts to be found by the jury are these: 1st, That there is some amount due on the original judgment and what the amount is. 2ndly, That the defendant, (*terre-tenant*,) is in possession of land which belonged to the original debtor after judgment was obtained against him, and what land it is, describing the same with reasonable certainty. Now the jury in this case found nothing except the amount due on the original judgment. There is nothing in any part of the pleading that would aid the verdict. Whether the land is one or one thousand acres or where it lies, is nowhere disclosed in the pleading and verdict. See 2 *Evans' Harris,* 336, 343, 364, 365.

The Court below seemed to be aware of the imperfect state of the record on this point, and in the judgment that was rendered by it referred to the record in another case for a description of the land. Now this last mentioned record was only before the Court as evidence. If the Court below could call to their aid the record evidence offered in the case, to aid them in making up the judgment, they could also base their judgment on the parol evidence.

"Cured by verdict means that the Court will, after verdict, presume or intend that the particular thing required to sustain it was proved at the trial." *Merrick vs. Bank of Metropolis,* 8 *Gill,* 64.

But the verdict itself is incurable by any action of the Court. *Stirling vs. Garritee,* 18 *Md.,* 468; *Code, Art.* 75, sec. 9; *Miles vs. Knott,* 12 *G. & J.,* 442, 465; *State vs. Carleton, et al.,* 1 *Gill,* 249; *Hatton vs. McClish,* 6 *Md.,* 407, 410, 418; *Pettibone vs. Gozzard,* 2 *Root,* 254; *Smith vs. Raymond,* 1 *Day,* 189; *Kierle, et al. vs. Shriver,* 11 *G. & J.,* 405.

A judgment that goes beyond a verdict will be arrested. The judgment must be in accordance with the verdict, and if the whole record, down to and including the verdict, is so uncertain that it would not be a bar in a subsequent suit, for the same cause of action the judgment will be arrested. The sheriff's return to the writ should describe the land with certainty. 2 *Evans' Harris,* 510.

*Alexander Randall,* for the appellees.

The Court correctly sustained the demurrer. *Nat. Pahquioque Bk. vs. First Nat. Bk. of Bethel,* 36 *Conn. Rep.,* 325; *Cooke vs. The State Nat. Bk. of Boston,* 52 *New York Rep.,* (7 *Sickels,*) 105; *First Nat. Bk. of Whitehall vs. Lamb, et al.,* 50 *New York Rep.,* (5 *Sickels,*) 95; *Nat. Bk. vs. Commonwealth,* 9 *Wallace,* 353; *Coffey vs. Nat. Bk. of Missouri,* 46 *Mo.,* 142; *Regents' Case,* 9 *G. & J.,* 365.

To prove the requirements of this Court in 37 *Md.,* 257, 258, the only proof offered by the defendant was the mere finding, among the papers in the equity suit, of a short copy of the plaintiffs' judgment, not certified by the clerk, not ordered to be filed, not proved by plaintiffs, which with nine other short copies of such judgments, obtained by other plaintiffs, were marked "filed." This one fact, of the many required, could but raise a presumption against the

plaintiffs, and like all other presumptions, could be repelled by other facts—and the facts offered by the plaintiffs were sufficient for that purpose. 1 *Phil. Ev.*, 237, *referring to* 2 *John. Rep.*, 24, and 10 *John. Rep.*, 51 ; *Negro Joe vs. Burke,* 6 *G. & J.*, 136 ; *Craufurd vs. The State,* 6 *H. & J.*, 234 ; *Garrott vs. Johnson,* 11 *G. & J.*, 173 ; *Barry vs. Hoffman,* 6 *Md.*, 78 ; *Newcomer vs. Keedy,* 9 *Gill,* 264 ; *Campbell vs. Booth,* 8 *Md.*, 107,—*corrected by* 1840, *ch.* 96 ; *Moreland vs. Bowling,* 3 *Gill,* 502.

The proceedings in the equity cause against Henry W. Thomas, were solely to enforce a vendor's lien. Now, in that cause, in order to enable the plaintiffs to be paid their judgment out of any surplus of the proceeds of sale, it was required of them, to become parties to the suit by filing a petition, setting forth all the facts against the other parties thereto ; filing their judgment, duly certified and proved as an exhibit ; requiring answers of the other parties ; making proof of their claim, and obtaining an order or decree of the Court to pay it.

A sufficient description of the land held by the defendant as *terre-tenant* was set out in the defendant's 3rd plea, and the replication thereto, and record evidence offered thereof by plaintiff.

In this case, no such description of the land is required to appear in the *scire facias,* return thereto, pleadings or verdict. 2 *Evans' Harris' Entries, No.* 73, *p.* 364 ; *fi. fa., Nos.* 96 *and* 97, *pp.* 436 *and* 437 ; 2 *Harris' Entries, pages* 143, 173, 764, 765 and 767.

If required, its absence is cured by the verdict and by Art. 29, section 14, of the Code. 2 *Tidd's Prac.*, 824, *top; Foster on Scire Facias,* 73 *Law Lib.*, 324 ; *Eakle vs. Clarke,* 30 *Md.*, 322 ; *Gover vs. Turner,* 28 *Md.*, 600 ; *Browne vs. Browne,* 22 *Md.*, 115.

Should there be any mere formal objection to the judgment, this Court will amend it. *Clarke vs. Digges,* 5 *Gill,*

110; *State vs. Turner,* 8 *G. & J.,* 125; *Kent vs. Lyles,* 7 *G. & J.,* 73.

ALVEY, J., delivered the opinion of the Court.

The Farmers' Bank of Maryland recovered judgment in the Circuit Court for St. Mary's County in 1864, for $1250, against Henry W. Thomas and others. After the recovery of this judgment, the bank was converted into a national banking association, under the provisions of the Act of Congress, entitled "An Act to provide a national currency," &c., approved June 3rd, 1864, (U. S. R. St., sec. 5154, p. 1002,) with the name and title of "The Farmers' National Bank of Annapolis." In addition to the authority for the conversion contained in the currency Act, to which we have referred, the Legislature of the State, by the Act of 1865, ch. 144, expressly authorized the several banking institutions incorporated by the laws of the State to become banking associations under the laws of the United States; and by the third section of this Act of 1865, provision is made for the surrender and extinction of the State charters of the banks so converted, with a *proviso,* "that said bank, savings institution or savings bank, may continue to use its corporate name for the purpose of prosecuting and defending suits instituted by or against it, and of enabling it to close its affairs, but not for the purpose of continuing under the laws of this State, the business for which it was established," etc. The conversion of the original plaintiff in the judgment from a State to a national bank, took place in June, 1865, after the passage, and in pursuance of the Act of the State authorizing the conversion, and in May, 1874, a *scire facias* was issued on the judgment against the original defendants, and certain terre-tenants of the lands which had belonged to the defendants at the time or since the rendition of the judgment; the plaintiff using its original corporate name, in which the judgment was recovered,

instead of the name acquired under the law of the United States.

To this *scire facias,* various defences were taken by two of the terre-tenants named in the writ; and among these defences, the plea of *nut tiel record* was interposed, and also the plea of *nul tiel corporation,* or that the corporation named as the plaintiff in the writ had been dissolved, and its charter surrendered and abandoned.

As to the plea of *nul tiel record,* we understand the appellants as making no question on that in this Court; and we therefore pass it over without further remark. But the question of the supposed disability of the appellee to sue by its former corporate name has been strongly urged by the appellants; and as it is preliminary to all other questions that can arise in the case, it is proper that it should be first decided. The question is raised by demurrer to the rejoinder by the defendants to the replication to the defendant's second plea.

1. It is laid down in 1 *Bac. Abr.,* 33, as a settled principle in pleading, that if the existence of the person or corporation suing be denied, the plea is in bar; for if there be no such person or corporation, there is an end of the action; and this principle has been sanctioned by this Court, in the case of the *Bank of Metropolis vs. Orme,* 3 *Gill,* 444. But the question here is, not whether the particular corporation recovering the judgment is still in existence, but whether there be competent authority delegated to the existing corporation, organized under the law of the United States, and by a name different from that derived from the State, to prosecute and defend suits in the name of the former corporation, that is to say, in the name of the corporation that recovered the original judgment?

By the fourth section of the Act of 1865, ch. 144, it is declared that whenever any bank in this State shall have surrendered its charter, and become an association for the purpose of banking under the laws of the United States,

all its assets, real and personal, *without other transfer,* shall vest in and become the property of such association, and that such association shall be responsible for all the debts and liabilities of said bank, incurred prior to the surrender of its charter. From the terms of this Act, as well as those found in the Act of Congress, it is manifest that, by the act of conversion from a State into a national bank, all the assets of the former, including all judgments, were, by operation of law, transferred and assigned to the latter; and such being the case, it is clear that the present national bank would have the right to sue as assignee. But it was supposed that there might be suits depending, liable to abate, or judgments recovered remaining to be executed or reviewed, and where it would be convenient and proper that the proceedings should be carried on to final termination without the necessity of a change in the name of the party upon the record; and hence the *proviso* in the third section of the Act of 1865, ch. 144.

It is, however, contended by the appellants, that because the Act of Congress under which the bank was organized provides that each banking association shall have a proper corporate name, and expressly authorizes it to sue and be used, complain and defend, in any Court of law, or equity, as fully as a natural person could do, therefore the State law, authorizing the prosecution or defence in the name of the former corporation, is in conflict with the provisions of the Act of Congress, and consequently void:—That a national bank can only sue by its proper corporate name, and that it is not competent to the State to authorize it to sue by any other. To this general proposition we cannot assent. If this were an attempt to defeat the right of a national bank to sue in its proper corporate name, and to require it to sue in a name different from its own, as a condition upon which it would be allowed to maintain its suit, under State statute, in such case, a real conflict would arise, and the State statute would have

to yield to the right conferred by the United States law. But the Statute of 1865, ch. 144, so far as the right to prosecute is involved, simply confers a privilege, and it is optional with the national bank either to prosecute in its proper corporate name, or in that allowed by the State law. It is certainly competent to the State to regulate the mode and manner of prosecuting suits in her own Courts, and if such regulation does not not hinder or impair the rights and powers conferred upon the bank by the laws of the Union, it is not perceived upon what principle the State law should be denied its force and efficacy. These national banks, as Federal agencies, are only exempted from State legislation, so far as that legislation may interfere with, or impair their efficiency in performing the functions by which they are designed to serve the government of the United States. Any other rule, says the Supreme Court of the United States, in the case of the *National Bank vs. Comm.*, 9 *Wall.*, 362, would convert a principle founded alone in the necessity of securing to the government of the United States the means of exercising its legitimate powers, into an unauthorized and unjustifiable invasion of the rights of the States. And in speaking of the dependence of the national banks upon the laws of the particular States where they may be located, the Court, in the case referred to, declared that such banks are subject to the laws of the State, and are governed in their daily course of business far more by those laws than by the laws of the United States. All their contracts are governed and construed by State laws. Their acquisition and transfer of property, *their right to collect their debts, and their liability to be sued for debts,* are all based on State law. It is only when the State law incapacitates the banks from discharging their duties to the government that it becomes unconstitutional. We can perceive no possible conflict, therefore, between the Act of 1865, ch. 144, and the Act of Congress under which the national

banks are organized. "The Farmers' National Bank of Annapolis" is in reality the party plaintiff in the present suit, though prosecuting in the name of the "Farmers' Bank of Maryland;" and if there be a judgment for the defendants, the substantial plaintiff will be liable for costs.

It follows that the judgment on the demurrer in favor of the plaintiff was properly entered.

2. The next question to be decided is, whether the plaintiff in this cause became a party to the proceedings in the case of *Elizabeth Thomas vs. Henry W. Thomas*, on the equity side of the Circuit Court for St. Mary's County? That suit was instituted to enforce a vendor's lien upon the land of the defendant Henry W. Thomas, and under the decree there passed, the parties named as the terre-tenants in the present *scire facias* became purchasers of the land now sought to be made liable for the judgment recited in the writ.

In the case of the *Farmers' Bank of Maryland vs. Thomas*, 37 *Md.*, 246, a *scire facias* on the judgment recited in the present writ, the terre-tenants appeared, and, with other pleas, pleaded that the plaintiff had notice of the suit in equity, and after the decree, and the sale thereunder, became a party by appearing and filing its claim as creditor of the said Henry W. Thomas, upon the judgment recited in the *scire facias*, and sought payment thereof, out of the proceeds of sale, &c.

That case was decided by this Court upon the pleadings alone; and it was held, upon the assumption of the truth of the allegations of the plea, that the plaintiff would be bound by the proceedings in equity, and estopped from enforcing the lien of its judgment against the land, the proceeds of which it had sought to have applied to the satisfaction of the judgment. If the Court erred in rejecting the claim, the plaintiff's remedy was by an appeal.

But in this case, the facts are disclosed in proof, and according to which the only evidence furnished by the

record in the equity cause that the present plaintiff became a party thereto, is the single fact that there appears to have been filed on the 20th of September, 1867, nine short copies of judgments against Henry W. Thomas and others, in favor of divers persons, and among this number a short copy of the judgment recited in the present *scire facias*. It does not appear by whom or for what purpose this short copy of the judgment was filed. The clerk of the Court cannot say by whom he was directed to make the copy or file it. He is positive, however, that none of the officers of the bank gave him any direction in regard to it; and Mr. Harris, the local attorney of the bank, swears positively that he did not have the short copy filed. And in such state of case, it is too much to say, that there is binding and conclusive record evidence of the fact that the plaintiff in the *scire facias* became a party to the equity proceedings, and there sought payment of its judgment from the proceeds of the sale of the lands of the debtor.

In the ordinary case of a general creditors' suit, or where there is a fund in Court, and there is an order requiring creditors to come in to assert their rights and to participate in the distribution, in such and the like cases, the simple fact of a party's appearing and filing his claim in the cause, gives rise to the presumption that he intends to make himself a party to the record; for otherwise he would not be in a position to take the benefit of the proceeding. And this is the established practice. *Strike's Case*, 1 *Bl.*, 85, 86. But where the suit is instituted not for the benefit of creditors generally, but for the enforcement of some special right, as for the foreclosure of a mortgage, or the sale of mortgaged premises, or the enforcement of a vendor's lien, there, if a third person be interested in the subject-matter, and desires to come in and to be made a party, or seeks payment of a claim from the fund in controversy, he should, by some appropriate allegation, make known the nature and character of his

right, and the ground upon which he seeks to intervene. And this is required not only that the Court may be advised of the nature of the right, but to enable parties against whom it is asserted to meet and repel it, if it be unfounded or improper to be brought into the cause. *Ellicott vs. Welch*, 2 *Bl.*, 242 ; *Hammond vs. Hammond*, 2 *Bl.*, 306, 345. For the practice in such cases, see *Gaither & Warfield vs. Welch*, 3 *Gill & J.*, 259 ; *Hays vs. Miles*, 9 *Gill & J.*, 193 ; *Balch vs. Zentmeyer*, 11 *Gill & John.*, 282.

If, however, as matter of fact, the plaintiff did file its judgment and seek payment thereof from the proceeds of sale of the land upon which its judgment was a lien, it would be estopped from enforcing its judgment against the land in the hands of the purchasers, notwithstanding its proceeding in making itself a party, lacked the form required by established practice. If formal proceedings had been adopted, or indeed any allegation or statement made of record, to show that the judgment had been filed by the plaintiff for the purpose of obtaining distribution from the proceeds of the land sold, the record itself would be conclusive evidence upon the subject. But as the record fails to furnish such conclusive evidence, the parol proof offered by the plaintiff was admissible, not for the purpose as supposed by the defendants, of contradicting the record, but for the purpose of preventing an improper conclusion being drawn from the fact that a short copy of the judgment was found filed in the equity case.

We think, therefore, there was no error in the ruling of the Court below as stated in the second bill of exception.

3. The case was tried by a jury, and the verdict being for the plaintiff, there was a motion in arrest of judgment ; and the particular ground assigned was, that there was no sufficient certainty appearing in the record as to the land sought to be made liable for the judgment.

The verdict rendered was simply for a certain sum of money due on the original judgment ; there being no issue

made in the pleading that required the jury to find of what particular lands the defendants were terre-tenants. The Court, however, upon overruling the motion in arrest, directed judgment to be entered upon the verdict for the amount found to be due, and costs, to be levied of certain lands which were of Henry W. Thomas, and which had been sold under a certain decree to the said Elizabeth Thomas, and then held by her as terre-tenant. In entering this judgment we think the Court was in error.

A *scire facias* against terre-tenants is either general or special. It is general when it issues against all the terre-tenants of the judgment debtor, without naming them in the writ, but leaving them to be named in the sheriff's return; or it is special when the names of the terre-tenants are set forth in the writ. But the plaintiff, in the latter case, must be careful to name all the terre-tenants holding lands subject to the lien of the judgment, for if he omit to do so, those who are named may plead in abatement. *Jeffreson vs. Morton,* 2 *Wms. Saund.,* 7, (4;) *Proctor vs. Johnson,* 2 *Salk.,* 600.

In this case, the *scire facias* was issued in the special form, naming the terre-tenants to be warned, and commanded the sheriff to make known to the defendants in the judgment, and the terre-tenants named, being terre-tenants of all the lands of the defendants, etc. To this writ the sheriff simply returned, " Made known to all except W. A. Lyon."

The sheriff's return to a *scire facias* against terre-tenants must always be of a special character. The proceeding, so far as the terre-tenants are concerned, is strictly *in rem,* and it is essential that the land to be affected by the judgment should be properly described. In 2 *Tidd's Prac.,* 1124, in speaking of the sheriff's return to these writs, the author says that the return is either that there are no such tenants, or that he, the sheriff, has warned them to appear. " In the latter case, if the writ be general, the

sheriff should return that he has warned certain persons, being the tenants of *all* the lands in his bailiwick, describing them; or the tenants of certain lands, and that there are no others : a return that he has warned the tenants of all the lands generally, or certain persons, tenants of lands in his bailiwick, being insufficient.'' Whether the tenants be named in the writ or not, the particular lands of which they are tenants, remaining subject to the judgment lien, must be described in the sheriff's return. To see with what particularity and fulness such returns are made, it is only necessary to refer to the precedent found in 2 *Harris' Ent.*, 174. If there be no question as to the seisin of the judgment debtor, or the holding by the alleged tenant, of the lands returned, the judgment is entered for whatever may be found due on the original judgment, to be levied and made of the particular lands mentioned and described in the return to the writ. For form of judgments in such cases, see 2 *Harris' Ent.*, 143, 258, and *Jeffreson vs. Morton,* 2 *Wms. Saund.*, 19. And the *fieri facias* that issues upon the judgment, must give a sufficient description of the land to enable the sheriff to levy upon and seize it, to satisfy the judgment. 2 *Harris' Ent.*, 690.

In this case, as we have seen, the sheriff makes no mention of or reference to any land whatever in his return. There are three terre-tenants mentioned in the writ; but of what particular lands these parties are tenants,—what quantity or where located,—nowhere appears. In the defendant's third plea, it is alleged that a part of the land of Henry W. Thomas was purchased by each of two of the parties named in the writ as tenants, under a decree for the enforcement of a vendor's lien which was, as it is alleged, prior in date to the rendition of the judgment recited in the *scire facias.* But it is clear that no identity or sufficient description of the land can be derived from such allegation. It does not appear what particular part of the land each tenant purchased, or that any part of such land

was subject to the lien of the judgment. The judgment rendered upon the verdict should be supported by the record. The Court could not resort to the evidence that had been offered to the jury, for the purpose of obtaining a description of the land against which to render the judgment. There was no sufficient description of the lands appearing of record, either by the sheriff's return or in the pleadings, to justify the entry of the judgment by the Court; and therefore the motion in arrest should have prevailed.

*Judgment reversed.*

(Decided 1st March, 1877.)

