EPHRAIM BISH, Terre-tenant of WILLIAM STANSBURY, *vs.* SARAH V. WILLIAR and GEORGE W. STANSBURY, Executors of JOHN S. STANSBURY.

*Question whether a Scire facias will lie to Revive a judgment in rem—Defects in the proceeding considered—Who must be notified—Act of 1861, ch. 70, subjecting certain Leasehold estates to the lien of Judgments—Ground of Demurrer to writ of Scire facias—Defective writ of Scire facias.*

A judgment was recovered in 1854 against S., which was revived in 1859, and again in 1874 upon proceedings begun in 1868. In the revival judgment of 1874, it was alleged that a judgment was obtained against B., as terre-tenant of S. A subsequent proceeding by *scire facias* was instituted especially intended to revive the judgment obtained in 1874, against the land of B. as terre-tenant. On demurrer to the writ it was HELD:

1st. That although as against the judgment debtor and his heirs or personal representatives, the *scire facias* proceeding, which culminated in a judgment of *fiat* in 1874, was a continuation of the original proceedings in which the judgment was obtained; yet as against terre-tenants, who are entire strangers, a *scire facias* intended to subject land claimed by them to the payment of a judgment against another, must be regarded as so far a new proceeding, that everything necessary to co-exist to affect their rights must appear in the writ.

2nd. That conceding for the purpose of decision only, that a *scire facias* will lie to revive a judgment *in rem*, without deciding that it does, the writ was defective in not showing how the judgment of condemnation was revived.

3rd. That although the *scire facias* in question was intended to be special in form in order to revive previous judgments of *fiat* against said B. and one C. as terre-tenants, this should not have prevented the giving authority to the sheriff to notify all other terre-tenants, if there were any.

4th. That by the Act of 1861, ch. 70, leasehold estates over five years in duration are subjected to the lien of judgments to the same

Bish, Terre-tenant *vs.* Williar and Stansbury, Ex'rs.

extent as freehold estates; and the recitals in the writ showed that only estates in fee were by the judgments of *fiat* against B. and C. subjected to the payment of the judgment against S. If at the time the judgment was entered against B. and C., either of them had leasehold estates, such as are by the Act referred to, subjected to the lien of judgments, such leasehold property was as much subject to the payment of the judgment as estates in fee. And for that reason, supposing the judgment could be effectively rendered in that form, it should not have confined the *fiat* to estates in fee.

5th. That the writ was demurrable because it did not assert that there were no other lands or terre-tenants chargeable with the judgment.

6th. That although B. might plead in abatement if there were others, he might still demur for want of the averment that there were no others to be charged.

7th. That the writ was fatally defective because the judgment it recited against B. or rather against the land in his possession, was one which could not be enforced through *fieri facias*, by reason of its containing no description of the land intended or sought to be affected by it.

APPEAL from the Circuit Court for Carroll County.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, YELLOTT, STONE, IRVING, and RITCHIE, J.

*Charles B. Roberts,* for the appellant.

*Wm. P. Maulsby,* for the appellees.

IRVING, J., delivered the opinion of the Court.

This appeal brings for review several rulings, of the Circuit Court of Carroll County, upon a *scire facias* to revive a judgment in that Court alleged to have been recovered by the testator of the appellees against one William Stansbury, on the first day of April, 1854, and

which judgment is alleged to have been revived in 1859, and again in 1874, upon proceedings begun in 1868. In the revival judgment of 1874, it is alleged, that a judgment was obtained against the appellant as terre-tenant of Wm. Stansbury, and this proceeding is especially intended to revive the judgment then alleged as obtained against the land of the appellant as terre-tenant. A demurrer was interposed to the writ, which having been overruled, presents the first question for consideration. A *scire facias* to revive a judgment is, as to the judgment debtor and his heirs or personal representatives, a continuation of a former proceeding; still it is really an action, as to the parties sought to be charged, and should, therefore, contain sufficient certainty to enable the Court to give judgment. *Tidd's Practice,* 1090 ; *Pickett vs. Pickett,* 1 *Harr.,* (*Miss.,*) 269.

The writ is, in fact, a declaration to which the parties defendant plead or demur as in any other action, but directly to the writ. 2 *Tidd's Pr.,* 1090; *Prather vs. Manro,* 11 *G. & J.,* 261; and *Bowie vs. Neal & Luckett,* 41 *Md.,* 125.

In the case of *Prather vs. Manro,* this Court said the writ, "should contain on its face, such a statement of facts as to justify the process, in respect to the form in which it issues, and the persons who are made parties to it." The formality, with which all recitals necessary to establish a terre-tenant's liability, must be set out, will be seen by reference to *Jefferson vs. Morton & Dawson,* 2 *Wms. Saunders,* 6; which case is referred to in *Adams vs. Terre-tenants of Savage,* (2 *Salkeld,* 600,) as a good precedent. As respects terre-tenants, it is strictly a proceeding *in rem.* No personal judgment is obtained, but simply a judgment subjecting the land in the hands of the terre-tenants, which belonged to the judgment debtor at the date of the judgment, to its payment. The judgment of the Court is that such land may be taken by *fieri facias. Thomas vs. Far-*

*mers' Bank,* 46 *Md.,* 57, and authorities there cited. From the very object of the proceeding as against terre-tenants, it is manifestly necessary that there should be a specific description of the lands, that it may be certainly known *what lands* are liable to the execution ordered to go out. All this is so fully and clearly laid down in the case last cited, it is useless to say more on that subject; but will proceed to examine this writ in the light of the principles announced. Looking carefully at this *scire facias,* we find a number of defects for which the demurrer ought to have been sustained.

First, we may notice that whilst the writ alleges, that on the second Monday of May, 1874, a judgment was obtained against the lands of the judgment debtor, at date of the judgment; and in the hands or possession of the appellant as terre-tenant, it does not recite by what means such judgment was obtained. It fails to state whether this appellant was brought in by *scire facias,* in general or special form, whereby either in the writ, or in the special return of the sheriff, his land sought to be charged was indicated by description, giving him sufficient notice. Although, as against the judgment debtor and his heirs, or personal representatives, the *scire facias* proceeding, which culminated in judgment of *fiat* in 1874, was a continuation of the original proceedings in which judgment was obtained; yet, as against terre-tenants, who are entire strangers, a *scire facias,* intended to subject land claimed by them to the payment of a judgment against another, must be regarded as so far a new proceeding, that everything necessary to co-exist to affect their rights, must appear in the writ. The reason for this is, that strangers may falsify the judgment, whilst parties and privies are bound by it and estopped. *Proctor vs. Johnson,* 2 *Salkeld,* 599. We find no precedent precisely in point, for we can find no instance where *"fiat"* having once been secured against lands of a terre-tenant, an-

other *sci. fa.* has been resorted to for the renewal of such judgment, as is the case here. We have, however, found one precedent somewhat analogous. In a *scire facias* to enforce a judgment rendered on a forfeited recognizance, the writ recites not only the fact, that the recognizance was forfeited on a certain day, but also that the person bound thereby to appear, was duly called, and failed to appear, whereupon, the Court did adjudge the recognizance forfeited. 2 *Harris' Entries,* 740; 2 *Evans' Harris,* 470. Conceding for the purpose of decision only, that a *scire facias* will lie to revive a judgment *in rem,* without deciding that it does, we think, that if it does, this writ is defective in not showing how this judgment of condemnation was revived.

As against terre-tenants *scire facias* is a proceeding of great strictness, and all the common law requisites must be observed in the structure of the writ. It should set out all the facts relied on to justify the form in which it issues, and the relief it seeks against the persons named. This is especially seen in the case of *Jefferson vs. Morton,* (already cited.) The writ should contain everything that is necessary to make a complete cause of action against the terre-tenants' lands, which are sought to be charged, to put the terre-tenants, who are summoned, to defence. *Bowie vs. Neal & Luckett,* 41 *Md.,* 135.

2. In the second place, it may be observed, that this *scire facias* was intended to be special in form because there had been *fiats* already obtained against the appellant, and one Crouse as terre-tenants, which judgments it was sought to revive; but that should not have prevented the giving authority to the sheriff to notify all other terre-tenants, if there were any. There might have been some who became such since the proceedings began in 1868, which ended in *fiat* in 1874. Eleven years had elapsed. The judgment debtor was still alive. No suggestion, at least, is made of his death, and process was asked for him,

and went in this writ. There may have been other alienees of real or leasehold property. In this connection it is proper to say, that by the Act of 1861, chapter 70, leasehold estates over five years in duration are subjected to the lien of judgments to the same extent as freehold estates. By these judgments against Bish and Crouse, terre-tenants, as recited in the writ, it appears that only estates in fee are, by the judgment of *fiat* against them, subjected to the payment of the judgment against Stansbury. If, at the time the judgment was entered against Crouse and Bish, either of them had leasehold estates, such as are by the Act referred to, subjected to the lien of judgments, such leasehold property was as much subject to the payment of the judgment as estates in fee. If Crouse had any such, Bish was entitled as against him to have it bear its part of the burden. For that reason, supposing the judgment could be effectively rendered in that form, it should not have confined the *fiat* to estates in fee. This writ does not assert that there are no other lands or terre-tenants chargeable with the judgment. If the writ had been in the general form, the sheriff by his return would have been compelled to return the lands *by description* and the names of the persons as terre-tenants thereof, and having done so, certify that there are none other lands or terre-tenants. 2 *Harris' Entries*, 173, 174, and 2 *Ev. Harris*, 509; and if the sheriff failed to so certify, it would be ground of demurrer. *Harris' Entries*, 534. If, when the writ is in general form, such averment is necessary to make the sheriff's return good, a writ in special form, when calling on the Court to enforce the judgment against terre-tenants especially named, ought to aver there are no other lands in the hands of other persons which can be subjected. If the sheriff's return is demurrable for that omission, as we have seen it is, then this writ must be for like cause. All the statements of the writ may be true, and yet the appellant's land may

not be *wholly* subjected to the payment of the judgment. Although he may plead in abatement if there be others, he may still, it appears by authority, demur for want of the averment that there are no others to be charged; because it is on the theory that there are none, that he is called on alone, and all that is necessary to sustain the action must be averred in the writ. 2 *Poe Pl. and Prac.*, 485.

3. But if all this was not so, a still more serious and fatal defect remains to be considered. If the judgment which is recited as having been rendered against Bish, or rather the land in his possession, is all the judgment which was rendered, as we must suppose it to be, then it is *such a judgment as cannot be enforced* through *fieri facias*. This judgment contains no description of the lands intended, or sought to be affected by it, either in Crouse's possession or the possession of Bish. It simply recites a judgment of the Court that the plaintiff should have execution of "the lands whereof the said William Stansbury was seized in his demesne as of fee at the date of the judgment, or ever afterwards, and of which Ephraim Bish was terre-tenant." There is no further description supplied by reference to a sheriff's return or to the pleadings, through which the judgment could be made certain as to what it was to operate on. Manifestly there is no description of the lands in this judgment, which a sheriff, by *fieri facias* issued thereon, can be enabled to seize. The *fieri facias* issued in such case must contain a description of the land to be seized for the satisfaction of the judgment. *Thomas' Case*, 46 *Md.* 43; 2 *Harr. Ent.*, 690.

No specific lands are recited as condemned by this judgment, and if a *fieri facias* were to issue directing the sheriff to seize the lands as they are described in the judgment, the whole question of what lands were covered by the judgment, and he was justified in seizing, would be left to the discrimination of the sheriff. He would have to determine what lands had been conveyed by the judg-

ment debtor to the terre-tenants, Bish and Crouse respectively; and whether such conveyance was after the date when the judgment became binding on the land; and whether a fee was conveyed by the deed, (for only estates in fee are mentioned in the judgment,) all which would be in effect, making the judicial ascertainment of the sheriff necessary to give effect to the judgment. A judgment cannot be good and effective upon which an effective *fieri facias* cannot be issued; and no *fieri facias* can be good which requires of the officer more than the discharge of a purely ministerial duty. The judgment against the land in the hands of a terre-tenant is of precisely the same character as a judgment of condemnation of land or personalty in an attachment. It is the specific thing, or land which is condemned by the judgment, for the satisfaction of the debt; and unless that specific thing, or land, be so described that the sheriff can seize it with certainty, the judgment cannot be made effective, for want of certainty. It was just such a judgment which this Court, in the *Thomas Case* (already cited), said ought to be arrested, because there was no sufficient description of the lands intended to be affected, apparent of record, to justify the entry of the judgment. All the precedents of judgments in such cases are for lands properly described, either in the writ itself, or the sheriff's return, or the pleadings; and if not described in the judgment itself, reference is made in the judgment to the return or the pleadings for such description, thereby giving certainty to it. 2 *Harr. Ent.*, 143, 258; 2 *Ev. Harr.*, 364, and 2 *Wms. Saunders*, 6. It follows from what we have said that judgment on the demurrer must be rendered in favor of the appellant, because of fatal defects in the writ, and therefore, it is unnecessary for us to consider any of the other questions presented in the record. If the case were returned to the lower Court, it would be too late to

cure some of these defects by amendment, so we shall proceed to final judgment here.

> *Judgment reversed, and judgment on the*
> *demurrer to the writ for appellant.*

(Decided 14th February, 1883.)