## State v. First National Bank of Clark.

1. Section 4, Chapter 866, U. S. St. 1888, in respect to the jurisdiction of state courts in all actions by or against national banks, refers exclusively to civil actions, and the right of the state to punish a national bank for a violation of its police laws cannot be predicated upon it.

2. For any public offense which it can commit, a corporation may be indicted the same as a natural person.

3. A national bank, or any other corporation which congress, in the exercise of its legal powers, may authorize to be organized and operated, must be allowed to pursue the business and purpose of its organization, and exercise all the powers necessary or incident to such business without any restraint by or accountability to state laws; but, in the absence of other expresssion by congress; this is the extent of its exemption from subjection to state legislation.

4. The state law makes the taking of illegal interest a misdemeanor, and, in case of a corporation, punishes the same by fine. To require a national bank to so pay money to the state is not necessarily such an interference with the proper discharge of its duties to the government as will make such requirement invalid.

5. One of the powers included in the authorized business of a national bank is to receive interest on loans, which power is thus defined in the law: "Every association may take, receive, reserve, and charge, on any loan or discount made, or upon any note, bill of exchange, or other evidences of debt, interest allowed by the laws of the state or territory where the bank is located, and no more," etc.

6. A state law, making it a misdemeanor for the bank to do an act which the creative law has expressly refused to authorize or allow it to do, cannot "interfere with or impair its efficiency in performing its functions," or, if enforced against it, "incapacitate it from discharging its duties."

7. With a few exceptions, having no pertinency in this case, the police power in the United States belongs to and resides in the states.

8. The police power of the state yields to the act of congress, for it is "the supreme law of the land;" but it yields only when and to the extent that an enforcement of the police law would interfere with the act of congress, or with the free exercise of rights conferred, or the discharge of duties enjoined, by it.

9. State sovereignty remains unabridged for the punishment of all crimes committed within the limits of a state, except so far as they have been brought within the sphere of federal jurisdiction by the penal laws of the United States.

10. The provisions of Section 30 of the act referred to, declaring what results should follow the taking by a national bank of a greater interest than that allowed by law, is only a declaration of the legal effect of taking such unlawful interest upon the rights of the parties under the

contract. It is a civil punishment, as distinguished from a criminal punishment, and penal only in the sense that exemplary damages are penal.

11. The provisions of said Section 30, imposing consequences purely civil, were not intended to take the place or prevent the operation of the police laws of the state, upon the act of taking illegal interest.

12. It would be a strained and unwarranted deduction to conclude that, when congress imposed the usual civil penalties for taking unlawful interest common to nearly all state usury laws, it meant to have such penalties cover other or different ground, or have other or different effect, from the same penalties when found in corresponding provisions of state laws.

(Syllabus by the Court. Opinion filed March 9, 1892.)

Error to circuit court, Clark county. Hon. J. O. AN-DREWS, Judge.

Criminal action for usury. Defendant found guilty and fined. He brings error to this court. Affirmed.

The facts are stated in the opinion.

*O. F. Woodruff*, *F. E. Strawder* and *F. G. Bohri,* for plaintiff in error.

The state cannot exercise its criminal jurisprudence or any control except as congress permits over a creature having its origin from the national will, as evinced by the acts of con gress. Sturgis v. Crouningshield, 4 Wheat. 122; Prigg v. Pennsylvania, 16 Pet. 539; *Ex parte* Hamilton, 7 Fed. 767; State v. Pike, 15 N. H. 83; Bank v. Garlinghouse, 26 O. St. 492, 10 Am. 751; Central v. Pratt, 115 Mass. 539; Davis v. Randall, 115 Mass. 547; Hintermister v. Bank, 64 N. Y. 212; State v. Adams, 4 Blachf. 147; People v. Kelly, 38 Cal. 145; McCullock v. State, 4 Wheat. 316; Weston v. Charleston, 2 Pet. 466; Brown v. Maryland, 12 Wheat. 419; Farmers v. Dearing, 91 U. S. 29; Brown v. Bank, 77 Pa. 209; Wiley v. Starbuck, 44 Ind. 298; U. S. v. Cornell, 2 Mason's C. C. R. 91; U. S. v. Bailey, 9 Pet. 261.

*Robert Dollard* and *E. P. Conser,* for defendant in error.

Under acts of congress of February 18, 1875, and July 12, 1882, state courts have jurisdiction over national banking associations. Bank v. Morgan, 132 U. S. 282; Bank v. Bank, 81 U. S. 14 Wall. 383; Bank v. Cooper, 120 U. S. 816; Bank v.

Fare, 25 Fed. 209; Bank v. Miller, 15 Fed. 703; Whittemore v. Bank, 134 U. S. 1002; 22 Stat. at large, 162, 163, Chap. 290, Sec. 4; Bank v. Overman, 34 N. W. 107; 1 Kent Comm. 400; Wasson v. Bank, 5 West, 270; State v. Ins. Co. 127 U. S. 139. The jurisdiction of superior courts cannot be taken away by statute, except by express words or necessary implication. Gould v. Hayes, 19 Ala. 438; State v. Moore, Id. 514; Id. v. Bell, 5 Part. 365; Note 7, p. 303, Vol. 12, Am. Eng. Ency. Law.

KELLAM, P. J. The facts in this case are unimportant, as there is presented the single legal question, is a national bank subject to indictment, trial, and punishment for a violation of the state law which makes the receiving of a greater rate of interest than is allowed by law a misdemeanor? Plaintiff in error was so indicted and convicted, and alleges error in that the state court had no jurisdiction.

At the outset it was stated by counsel that no adjudication had been found upon this precise question. The counsel for the state quoted, and to some extent relied upon, Section 4, Chapter 866, U. S. St. 1888, providing "that all national banking associations established under the laws of the United States shall, for the purposes of all actions by or against them, real, personal, or mixed, and all suits in equity, be deemed citizens of the states in which they are respectively located; and in such cases the circuit and district courts shall not have jurisdiction other than such as they would have in cases between individual citizens of the same state." But there is nothing in the language of this section to indicate that it refers to any other than civil actions and proceedings. Indeed, it is clear that it refers only to such. It evidently was not intended to give the state courts jurisdiction to try criminal offenses created by the national bank act. If such jurisdiction exist, it must be found elsewhere. Counsel for plaintiff in error maintains his argument of no jurisdiction upon three propositions; "*First.* The state cannot exercise its criminal jurisdiction over a creature having its origin from the national will, as evinced by the acts of congress. *Second.* As against the national will, the state has no power, by taxation or otherwise, to retard, im-

pede, burden, or in any manner control the operations of the
constitutional laws of congress. *Third.* The state can exer-
cise control only over institutions whose creation emanated from
national authority to the extent that congress permits." That
a corporation, as such, may be indicted and tried, and thus
punished criminally for a public offense which it can commit,
is no new proposition. Some crimes a corporation cannot com-
mit. It has no soul, and so can have no actual wicked intent.
It cannot be guilty of treason, or murder, or criminal con-
spiracy. Other offenses it may and does commit when it does
or omits to do some act, the doing or non-doing of which con-
stitutes the offense, without regard to the intent. So a corpora-
tion may be punished criminally, if such acts are made public
offenses, for abstructing a highway, polluting a stream, or tak-
ing illegal interest. This law and this distinction are older
than Blackstone, and will be conceded without authorities.
The non-accountability of plaintiff in error to the criminal law
of the state which the indictment charges it with violating, if
it exist at all, comes not from its character as a corporation,
but from its character as a federal corporation, and the pro-
tection thrown about it by the act of congress under which it
was organized.

The first proposition of plaintiff in error declares the total
freedom frow responsibility to state criminal laws of "every
creature having its origin from the national will, as evinced by
the acts of congress." It would require but little examination
to demonstrate that this proposition cannot be maintained with-
out material qualification. It is agreed that plaintiff in error
is "a creature having its origin from the national will," towit,
a national bank, authorized by and organized under the acts of
congress; but it could not, without criminal liability under
state laws, which nobody would question, erect its banking-
house across the street in the city of Clark. It is to broadly
stated to say that a national bank, because created under and
by authority of congress, is entirely independent of all police au-
thority of the state. It is doubtless true that whatever congress
has authorized it to do it must be allowed to do without inter-

ference by the state. A national bank, or any other corporation which congress, in the exercise of its legal powers, may authorize to be organized and operated, must be allowed to pursue the business and purpose of its organization, and exercise all the powers necessary or incident to such business, without any restraint by or accountability to state laws. The state could rightfully pass no law, police or other, that would hinder or obstruct the bank in the prosecution of the business which, under the act of congress, it was authorized to do, and its pow· ers should be liberally regarded, in order to avoid any possible friction between the federal and the state governments. In Bank v. Com., 9 Wall. 353, where the question was as to the right of the state to tax shares of stock of a national bank, Mr. Justice MILLER, in speaking of the right of the state to legislate over and control the instrumentalities of the federal government, and of the limits of such right, says: "That limitation is that the agencies of the federal government are only exempted from state legislation so far as that legislation may interfere with or impair their efficiency in performing the functions by which they are designed to serve that government. * * * It is only when the state law incapacitates the banks from discharging their duties to the government that it becomes unconstitutional." This statement of the law is clear and perspicuous, and at once introduces the question whether the state law making the receiving of illegal interest a criminal offense interferes in any manner or to any extent with the discharge by the bank of its duty to the government, or with the business which a national bank is authorized by congress to do. The punishment imposed upon the bank by the state for a violation of this law is a fine,—the payment of money to the state; but to require a national bank to pay money to the state is not necessarily such an interference with the proper discharge of its duties to the government as will make the law invalid. A statute of Kentucky, requiring national banks within its limits to pay to the state the full amount of the tax rightfully laid on the shares of its stock, with penalties for not doing so, was held valid. Bank v. Com.,

*supra.* One of the powers included in the authorized business of a national bank is to loan money, and to receive interest thereon, which power is thus defined in the thirtieth section of the act: "Every association may take, receive, reserve, and charge on any loan or discount made, or upon any note, bill of exchange, or other evidences of debt, interest at the rate allowed by the laws of the state or territory where the bank is located, and no more," etc. It seems clear that the penal law of the state does not forbid any act, or interfere with the exercise of any right or power, conferred or authorized by this section. The thing forbidden by the state law, and which it makes a misdemeanor, is the very thing which the act of congress excepts from the powers and business of a national bank. This Section 30, and other sections of the national bank law, strongly characterize the act complained of in this indictment as entirely outside of the business or the powers of a national bank. It can hardly be maintained that a state law forbidding the bank to do an act which the creative law has expressly refused to authorize or allow it to do can "interfere with or impair its efficiency in performing its functions," or that such law, if enforced against it, would "incapacitate the bank from discharging its duties." The principle here involved is the same as in case of an agent or officer of the federal government. The state may not hinder him in the discharge of any official duty, but the line which limits his duty must also limit his freedom from accountability to state authorty. A postmaster, in discharge of, and within the bounds of, his official duty, is amenable only to the federal authority; but a postmaster who with one hand delivers a letter to a patron, and with the other wantonly strikes him in the face, is guilty of assault and battery under the police laws of the state. This branch of the law was very thoroughly considered and the cases reviewed in Re Neagle, 135 U. S. 1, 10 Sup. Ct. Rep. 658, and the court held that Neagle was not subject to be held and tried under and for a violation of the laws of the State of California; not because he was an officer of the United States when he shot Terry, but because in shooting him "he acted in dis-

charge of his duty an officer of the United States;" and that, being fully authorized by the laws of the United States to do the very act complained of, he could not be held to answer for the act to the courts of the State of California. So here, if by any construction of the law of congress it could appear that the act for which plaintiff in error was indicted was done in the exercise of any of the powers conferred upon it, either expressly or impliedly or incidentally, or was a necessary or convenient act in the discharge of its duties to the government, it could not be held to answer to the state court for such act, for that would be to interfere with it in the discharge of its legitimate functions; and this is the doctrine of all the cases upon this subject.

The second proposition—that, "as against the national will, the state has no power, by taxation or otherwise, to retard, impede, burden, or in any manner control the operation of the constitutional laws of congress"—would not be questioned in any court; but it does not appear to us, for reasons already noticed, that the state law under consideration does "retard, impede, burden, or in any manner control the operation of the constitutional laws of congress."

The third proposition is "that a state can only exercise control over institutions whose creation eminated from national authority to the extent that congress permits." The correctness of this proposition may be fully recognized, and still leave open and unanswered the really vital question in this case. Has congress in any manner indicated its willingness or its unwillingness to permit the state to make the taking of unlawful interest by a national bank a misdemeanor, and punish it as such? The constitution of the United States declares that that constitution, and the laws of the United States which shall be passed in pursuance thereof, shall be the supreme law of the land. The act of Congress under which plaintiff in error was organized as a national bank is in pursuance of the constitution, and such bank must be recognized and treated as an "instrument designed to be used to aid the government in an important branch of the pub-

lic service." Bank v. Dearing, 91 U. S. 29. With a few exceptions, having no pertinency to this case, the police power in the United States belongs to and resides in the states. Tied. Lim. Police Powers, § 201; License Cases, 5 How. 504. This police authority of the state yields to the act of congress, for it is the "supreme law of the land;" but it yields only to the extent that it is displaced by it,—only to the extent that the ground which the police law would otherwise occupy is rightfully occupied by the federal law,—to the extent that an enforcement of the police law would collide or interfere with the act of congress, or with the free exercise of rights conferred or the discharge of duties enjoined by it. In the thirtieth section of the act referred to, congress has provided what results should follow the taking by a national bank of a greater interest than that allowed by law, and has declared its effect upon the contract, and provided a redress between the parties, and imposed a "forfeiture of the entire interest" upon the bank; but this is simply declaring the legal effect of taking such unlawful interest upon the rights of the parties under the contract. It may be disciplinary, and a punishment, but it is a civil punishment, as distinguished from a criminal punishment. Exemplary damages, recovered in a civil action, are in a sense penal, but they never prevent the criminal law from operating upon the same act in the name of the state. One is civil and the other criminal. One is based upon the violation of private rights, the other upon the violation of the right of the state to have its law respected. The reserved right of the state to control the conduct of persons within its limits has always been the more readily recognized by the federal government from its evident justice, and its advantage to both state and federal governments. And so the right of the statute has never been questioned to regulate its own internal economy; to encourage what it thought desirable, and to discourage and punish what it thought undesirable and hurtful to its citizens; to determine when and to what extent and in what manner the weak should be protected against the strong; to determine, in view of the condition of its own people, which cannot be so well understood by a distant

congress, whether any particular thing is inimical to their wel-
fare, and, if so, to forbid and punish it; and generally to fix its
own standard of legal right and wrong, and to compel its ob-
servance.    The act of March, 1887, makes national banks, for
all purposes of business intercourse with others, citizens of the
states where located, and I do not think that these provisions
of Section 30, concerning remedies and consequences purely
civil, were intended to supersede or prevent the operation of the
police laws of the state.  Suppose that the law under which this
bank was organized had also provided that a note or discount
taken by such bank on Sunday should be void, and that the bank
should forfeit the money so loaned.    Could it be reasonably
claimed that such provision would be a bar to the prosecution of
the bank for a violation of the Criminal Code of the state, forbid-
ding the transaction of business on Sunday?   I think the an-
swer would be prompt and satisfactory that the forfeiture de-
clared by the act of congress was civil in its nature, like exem-
plary damages, and did not take the place of punishment for
a violation of the criminal law of the state.    Congress has
passed no law under which the forbidden act may be punished
criminally as an offense against the public; and, as the forfeit-
ure of interest is distinctly a civil penalty, it follows that, in
our judgment, congress has left it to the state to exercise its
ordinary police powers in the premises, for "all courts and
jurists agree that state sovereignty remains unabridged for the
punishment of all crimes committed within the limits of a state,
except so far as they have been brought within the sphere of
federal jurisdiction by the penal laws of the United States."
Com. v. Tenney, 97 Mass. 50; Com. v. Peters, 12 Metc. (Mass.)
387.   Of course we shall not be understood as discussing what
congress may do, but what it has done, in respect to exempting
national banks from amenability to state police laws.  The only
indication that congress did not intend to allow its national
banks to be held answerable to state criminal laws for taking
illegal interest is the fact it provided that a forfeiture should
result from such act; and then it is argued that a penalty or
forfeiture like that named in said Section 30 is inconsistent with

or at least unfavorable to, the thought that congress understood that such banks would still be subject, in this respect, to the police laws of the state. This would only be a fair inference if the forfeiture provided by congress was such in its nature as did, or would within the common understanding of lawmakers, take the place or answer the purpose of the penalties usually provided in police laws; but they do not. They are precisely the penalties found in the interest regulating laws of states, which also make the taking of illegal interest a criminal offense. It is therefore a strained and unwarranted deduction to conclude that when congress imposed the usual civil penalties for taking unlawful interest common to nearly all state usury laws, it meant to have such penalties cover other and different ground, and have other and different effect from the same penalties when found in the corresponding provisions of state laws. We think the court below had jurisdiction of this case, and this holding disposes of all the errors assigned. The judgment of the circuit court is affirmed. All the judges concur.