336            KENTUCKY REPORTS.            [Vol. 105

M. V. Monarch Co. v. First National Bank of Terre Haute, Ind.

CASE 42—ACTION ON GUARANTY—JANUARY 18, 1899.

# M. V. Monarch Co. v. First National Bank of Terre Haute, Ind.

### APPEAL FROM DAVIESS CIRCUIT COURT.

1. BILLS AND NOTES—NEGOTIABLE NOTES.—Negotiable notes not indorsed to nor discounted at the bank at which the same were made payable or at any other bank in this Commonwealth incorporated under its laws or those of the United States must be regarded simply as promissory notes.

2. GUARANTY OF PAYMENT.—A guaranty of payment and not of solvency is imported by this language in a contract between a trading corporation and a bank, "The paper that we may discount with you that may be returned unpaid we desire charged to our account, and should same not cover it at the time wire us immediately and we will cover it by wire or New York draft, as you may desire;" and an action may be brought upon same without testing the solvency of the makers of the discounted paper.

WALKER & SLACK FOR THE APPELLANT. (FAIRLEIGH & STRAUS AND LITTLE & LITTLE OF COUNSEL.)

1. The notes sued on are simply promissory notes and in order to recover against the appellant the holder of the notes must have sued the maker at the first term of court after the same became due. Ky. Stat., sec. 483; Carlisle v. Chambers, &c., 4 Bush, 268.

2. The amended petition seeking to recover upon the guaranty is a departure from the original cause of action which sought to recover upon the notes upon the assumption that they had been placed upon the footing of foreign bills of exchange. Ky. Stats., sec. 475; Humphrey v. Hughes' Guardian, &c., 79 Ky., 487.

3. After permitting the plaintiff to amend, the court should have sustained defendant's motion to require it to elect.

4. The court should have sustained the general demurrer to the petition as amended.

M. V. Monarch Co. v. First National Bank of Terre Haute, Ind.

POWERS & ATCHISON FOR THE APPELLEE.

1. The contract between the parties as shown by their correspondence imports an absolute guaranty of the payment and not a guaranty of the solvency of the makers of the discounted paper. Douglas v. Howlang, 24 Wend., 35; Oxley v. Young, 2 H. Black., 613; Lowe & Co. v. Beckwith, 14 B. M., 150; Wilson v. Hengages, 28 Minne., 102; Smart v. Smart, 97 Ky., 559; Thompson v. Glover, 78 Ky., 193; Levi v. Mendell, 1 Duv., 77; Memphis v. Brown, 20 Wallace, 289; Railroad Co. v. Howard, 7 Wallace, 407; Zabriskie v. Railroad Co., 23 How., 381; Leggett v. Raymond, 6 Hill, 641; Bowman v. Curd, 2 Bush, 565; 9 Am. & Eng. Enc. of Law, p. 27; Beach, Modern Law Contracts, vol. 1, sec. 34.

JUDGE PAYNTER DELIVERED THE OPINION OF THE COURT.

The appellant is a trading corporation in the city of Owensboro, in this State, and the appellee is engaged in business at Terre Haute, Ind. This action was instituted by the appellee against appellant to recover judgment for the amounts of sundry notes which were executed by the Belle of Nelson Distillery Company to the M. V. Monarch Company, payable at certain banks in the city of Louisville, Ky.; on certain drafts drawn by the appellant company on the Belle of Nelson Distillery Company, accepted by it, and made payable at certain banks in the city of Louisville; on certain drafts drawn by the appellant company on Straus & Aronson, and accepted by them; on a promissory note executed by them; and on certain sundry promissory notes executed to E. A. Fargo & Co., of San Francisco, California—all of which were indorsed by the appellant, and delivered to the appellee for discount at its banking house in Terre Haute, which was done by it, and the proceeds placed to the credit of the appellant. None of the notes or drafts were indorsed to and discounted at any bank in this Commonwealth. There was no evidence offered to

[ 22 ]

show that they were, under the laws of the State of Indiana, placed upon the footing of foreign bills of exchange, and it is not necessary to discuss the question as to what would have been the effect on the transaction if that State of facts had been shown. It is sufficient to say that they must be regarded, under our statute, simply as promissory notes, as they were not indorsed to, nor discounted at, the bank at which the same were made payable, or by any other of the banks of this Commonwealth, incorporated under its laws, or organized in this Commonwealth under any law of the United States. Plaintiff sought to recover the amounts of the notes and drafts, because it was believed that they were upon the footing of foreign bills of exchange, and therefore the defendant was bound to pay them without it first being required to prosecute the makers and acceptors to insolvency. The plaintiff filed amended petitions, evidencing a change of opinion as to the character of the instruments in suit, and averred that it was entitled to recover the amount of the notes by reason of a contract which the parties made with reference to discounting drafts and notes, and averred the contract to be as evidenced by a correspondence between the parties, which is as follows: The appellant wrote the appellee as follows: "Gentlemen: A friend of mine of this place spoke to me about your banking, saying possibly we could be able to get a line of discounts from you at reasonable rates, knowing that we had a large amount of paper to handle during the year. Our references in your city are H. Hulman (to whom, while in business, we sold largely), Hulman & Beggs, S. C. Parker, Hey Meyer Cook, Bell & Black, and E. H. Bindley & Company, all of whom are our customers, and have known us for years. We sell exclusively to the jobbing trade, all over the

country, from Boston to 'Frisco, from St. Paul to Galves-ton. We would not simply wish to keep a running account with you, i. e., for papers sent you for you to remit us the proceeds, but, if agreeable to you, we would open a regular account and keep a regular account. It would fluctuate very much, of course, all the way from $500 to $20,000 balance, as our need might be. We protect our paper and our customers' paper (when it is honored) promptly. Any of the parties referred to can tell you about us. Let us know and if the rate is satisfactory, we will be pleased to open an account with you. Yours, very truly, Fred W. Clarke, Treas. M. V. Monarch Company." The appellee made a response as follows, to-wit: "The M. V. Monarch Company, Mr. Fred W. Clarke, Treas.—Dear Sir: Your letter of the 27th inst. is received, and contents noted. We should be very glad to discount paper for you, and to have you open an account with us. We take it that the paper you offer would be on firms of the class you mention in your letter of reference. Our rate is 6 per cent., and we would undertake to carry on time for you as much as $50,000. We would place the proceeds to your credit, subject to your cheque or draft on any of the principal cities you may direct. Hoping to hear from you again, and that we may be able to do some business with you, we remain, Yours, very truly, D. Deming." To that letter the appellant made the following response: "First National Bank, Terre Haute, Ind., Gentlemen: Your favor of the 26th to hand, and carefully noted. In reply to same, we beg to state that we accept your proposition, and shall at once commence sending you paper for discount, and credit on account. Please bear in mind that we understand the obligations of a customer to a bank thoroughly; that we are business people, and shall endeavor to conduct our account

with you on strictly business principles; and at any time we are going wrong, according to your rules, don't hesitate to call us to time; also, that paper sent you is for your approval. We thank you very much for your letter, and assure you that we shall do everything in our power to make our account satisfactory. Of course, just at the present time business is rather dull in our line, and our account will be rather small at first, which, however, we consider to be the best plan until we learn your way of doing business, and you see that we conduct our account in a businesslike way. The paper that we may discount with you that may be returned unpaid we desire charged to our account, and, should same not cover it at the time, wire us immediately, and we will cover it by wire or a New York Draft, as you may desire. Yours, very truly, M. V. Monarch Company. By Fred W. Clarke, Treas."

The plaintiff sought a recovery on the above state of facts and alleged that the letters constitute a guaranty to the effect that the Monarch Company will pay the drafts and notes at maturity, if the acceptors of the drafts and payors of the notes do not do it. It is not a guaranty of solvency of the acceptors and payors, but a guaranty of *payment.* It is a continuing guaranty, as the parties looked to a future course of dealing for an indefinite time, and a series of credits to be given, and the amount for which the appellant was to become liable thereon depended upon the amount of paper it desired to have appellee discount, and appellee's willingness to do so. The appellant knew from time to time the extent of its liability on its guaranty to appellee, and in its letter to the appellee, said: *"The paper that we may discount with you that may be returned unpaid we desire charged to our account, and, should same not cover it at the time, wire us immediately, and we will cover it by wire or New York draft, as you may desire."*

The unpaid paper was to be charged to the appellant's account, and so prompt did it intend to be that it did not desire the appellee to wait upon the slowness of the mails, but to wire it immediately in the event there was nothing to its credit in the bank to meet the returned unpaid paper, and payment would be made by wire or New York draft, as the appellee might desire. It seems to us that no language could have been employed to show more satisfactorily that the guaranty was one of payment.

Counsel for appellant insists that the first letter was a proposition, and the response to it closed the entire arrangement. To this we can not agree. The first letter was in the nature of an inquiry as to whether the appellant could make arrangements to have paper discounted by appellee. At the close of the letter, it said: "If rate is satisfactory, we will be pleased to open an account with you." This shows that it did not suppose it had made any definite proposition to the appellee. Appellee's response stated the rate of discount, and amount of paper it would carry for it, and the appellant then wrote the letter which counsel says was not necessary to complete the arrangement; but appellant very properly supposed it was, because it said, "We accept your proposition," and then, as an inducement and consideration for the "approval" and discount of paper (all was to be sent subject to appellee's approval) which appellant should offer, the language to which we have referred as amounting to a guaranty of payment was used, and it is part of the contract between the parties.

The salutary rule for the interpretation of guaranties is given by Beach on the Modern Law of Contracts, sec. 34, which is as follows: "Thus, a guaranty is a mercantile instrument, to be construed according to what is fairly to be

presumed to have been the understanding of the parties, without any strict technical accuracy, but in furtherance of its spirit, and liberally, to promote the use and convenience of commercial intercourse. It should be given that effect which will best accord with the intention of the parties, as manifested by the terms of the guaranty, taken in connection with the subject matter to which it relates, neither enlarging the words beyond their natural import in favor of the creditor, nor restricting them in aid of the surety. The circumstances accompanying the whole transaction may be looked to in ascertaining the understanding of the parties." The appellant's construction of the contract, whilst the business was being conducted under it, was the same as we have given it, because, previous to the time the drafts and notes were returned unpaid, some others which they had discounted had also been returned unpaid, and it sent the appellee checks and drafts to cover them.

After the Belle of Nelson Distillery Company failed, the appellant, by letter, acknowledged its obligation to pay its paper which had been discounted by the appellee. It will be noticed, from the letter which it wrote the appellee, that it sold to the jobbing trade "from Boston to 'Frisco, from St. Paul to Galveston," and we can not believe that the appellee, a banking institution, would have entered into a contract with the appellant by which it was to take paper executed by persons in various parts of this country, and be compelled to incur the delay and expense that would result in prosecuting to insolvency such persons as failed to pay the paper which it had discounted for appellant. All the paper it discounted for the appellant was done upon the strength of the agreement to which we have just referred. Having reached the conclusion that

it was a guaranty of payment, and not a guaranty of solvency, the adjudications of this court determined satisfactorily and certainly the liability of the appellant.

After reviewing the authorities, in Lowe v. Beckwith, 14 B. Mon., 193, [58 Am. Dec., 659] the court said: "Where the meaning of a guaranty is assumed to be that a third person shall pay a debt, or where it is that, in case of a default on the part of the latter, the guarantor will undertake the performance himself—and the guaranty sued upon in this case imports, undeniably, one or the other of these undertakings—then there does not seem to be, according to the well-established principles of the common law, any obligation upon the creditor to demand payment of the debtor primarily liable, but it is the duty of the guarantor, by inquiring of his principal, to ascertain whether payment has been made, and, if not, to make it himself, in pursuance of his contract to that effect. Douglass v. Howland, 24 Wend., 35; Oxley v. Young, 2 H. Black, 613. . . . And if he has undertaken that the debt shall be paid by the debtor when it falls due, its nonpayment by him necessarily involves a breach of his undertaking; or, if his contract be that he will pay it himself in the event of its nonpayment by the debtor, the default of the latter renders his undertaking absolute, and he becomes immediately liable to an action, inasmuch as it is his duty, according to the very terms of his contract, to pay the debt without demand or notice." This action is not upon an assignment of a promissory note; therefore it was unnecessary to aver, as required by section 475 Kentucky Statutes, the consideration for the indorsement and delivery of the paper to the appellee. Under the written contract between the parties, the rate of discount was to be 6 per cent., which was the

lawful rate of interest. If the appellee failed to keep its contract in this regard, it was a matter of defense, and should have been pleaded. The amount which the appellant guaranteed to pay was the face of the notes and drafts when they were returned unpaid. That is what was adjudged in this case, with legal interest. Plaintiff, by the petition, sought to recover the amounts of the notes and drafts and interest. The amendments contained additional facts which show the right to recover the several amounts for which judgment was sought. We do not think the amendments were departures from the original cause of action, and the court did not err in permitting them to be filed.

The judgment is affirmed.

---

Case 43—ASSESSMENT FOR TAXATION—January 18, 1899.

APPEAL FROM DAVIESS CIRCUIT COURT.