CASE 50.—ACTION BY MERCHANTS' NATIONAL BANK OF
    LAFAYETTE, IND., AGAINST W. P. FORD, IN
    WHICH DEFENDANT FILED A CROSS PETITION
    AGAINST CROUCH & SON CLAIMING DAMAGES
    FOR FRAUD IN THE SALE OF A STALLION.—
    January 23

## Merchants' National Bank v. Ford

Appeal from Owen Circuit Court.

JOHN D. CARROLL, Special Judge.

From the judgment for Ford, plaintiff and Crouch
& Son appeal.  Affirmed.

1.  Appeal—Review—Damages—Excessive—Breach of Contract.—
    Under the rule that a verdict awarding damages will not be
    disturbed, as being excessive, unless it is palpably against
    the evidence, so as to strike the mind at first blush as being
    the result of passion or prejudice, a verdict for $1,600 dam-
    ages for breach of a warranty that all colts of a stallion,
    sold for $1,800, would be black, brown, or bay in color; that
    he was free from all defects and that he would produce colts
    from 75 per cent. of all mares bred to him; and for the
    breach of an agreement not to sell any stallion of the same
    breed within 20 miles of the buyer's residence—was not
    excessive.
2.  Appeal—Reservation of Grounds for Review—Motion for New
    Trial.—Instructions not relied on as a ground for new trial
    will not be considered on appeal.
3.  Same—Objections to Pleadings—Name of Defendant.—Where
    a cross-petition was filed against "J. C. and ——— C., partners,
    doing business under the firm name of J. C. & Son." and
    they entered appearance and answered without exception,
    complaint cannot be made on appeal because the son's name
    was not given in the pleadings.
4.  Constitutional Law—Privileges and Immunities—Corporations.
    —A corporation is not a "citizen" within the meaning of
    Const. U. S., art. 4, sec. 2, providing that the citizens of each

state shall be entitled to all the privileges and immunities of citizens of the several states, nor within the meaning of 14th Amend., sec. 1, providing that no state shall abridge the privileges and immunities of citizens of the United States.

5. Same—Equal Protection of the Laws—Corporations.—A foreign corporation not subject to process issuing from the courts of the State is not within its jurisdiction within the meaning of Const. U. S., 14th Amend. sec. 1, providing that no state shall deny to any person within its jurisdiction the equal protection of its laws.

6. Same.—A nonresident corporation cannot demand rights which are accorded not to the citizens of the State, but only to resident incorporated banks.

7. Banks and Banking—National Banks—Right to Regulate.—Ky. Stats., 1903, sec. 483, placing notes payable and negotiable at banks organized in the State under the State and federal laws, and indorsed to, or discounted by, any such bank on the same footing as foreign bills of exchange, violates no rights secured to national banks by acts of Congress, such banks being subject to the control of the state in which they are situated, as regards the construction of contracts, the transfer of property, or creation of debts and liability to suit.

CLORE, DICKINSON & CLAYTON and J. H. SETTLE, for appellants.

CAMMACK & PERRY, J. G. VALLINGHAM and H. G. BOTTS, for appellees.

OPINION OF THE COURT BY JUDGE HOBSON— Affirming.

On January 5, 1903, J. Crouch & Son sold to W. P. Ford a Norman Coach Stallion for $1,800, to be paid in three installments of $600 each, for which Ford executed notes payable at the Citizens' Bank at New Liberty, Ky. The first note fell due on October 1, 1904. In September, 1904, Crouch & Son assigned the first note to the Merchants' National Bank of Lafayette, Ind. Ford declined to pay the note when due, and the bank brought this suit against him. Ford filed an answer in which he pleaded as a counter-

claim that at the time of the sale of the stallion to him no other stallion of that breed was kept in the county, and as an inducement to purchase Crouch & Son obligated themselves that they would not place or sell to any one who would place a stallion of the same breed within 20 miles of his residence; that they also warranted that the breeding and pedigree of the stallion were such that all colts sired by him would be black, brown, or bay in color, and that he would get colts from 75 per cent. of all mares bred to him; that they warranted that the horse was sound and free from all defects. He further alleged that Crouch & Son, immediately after the sale of the stallion to them, sold another stallion of the same breed to D. D. Foree to be stood within five miles of his residence; that the colts sired by the stallion sold to them were not all black, brown, or bay in color; that the horse was not sound and all right, but was a cribber or stump sucker, and that he only got colts by 56 per cent. of the mares bred to him; by reason of all of which he alleged that he had been damaged in the sum of $2,000, which he pleaded as a counterclaim against the note, making his answer a cross-petition against J. Crouch and ———Crouch, partners, doing business under the firm name of "J. Crouch & Son." He prayed that the plaintiffs' petition be dismissed, and for judgment over against Crouch & Son. The plaintiff demurred to the answer. Its demurrer was overruled. Crouch & Son filed an answer to the cross-petition, denying its allegations. The case was tried by a jury. There was evidence on the trial by the defendant sustaining the defense set out in his answer, and there was evidence by the plaintiffs contradictory of the defense. The court instructed the jury in substance that, if the horse was warranted as alleged in the defendant's

answer, and the warranty had been broken, they should find for the defendant the damages he had sustained, and should set off the damages against the note, finding a verdict for the plaintiff for the balance of the note, if the damages did not equal the note, and finding against Crouch & Son, if the damages exceeded the note, the amount of the excess of damages over the amount of the note. The jury, under these instructions, found for the defendant Ford against Crouch & Son in the sum of $1,000; on which the court entered judgment dismissing plaintiffs' petition and adjudging that Ford recover of Crouch & Son $1,000. From this judgment, Crouch & Son and the bank appeal.

When the verdict of the jury is read in connection with the instructions of the court, it is evident that the jury fixed the entire damage to Ford by reason of the breach of warranty at the amount of the note plus $1,000, which would make the amount of the damage as found by the jury in round numbers something over $1,600. It is insisted that the verdict is palpably excessive under the evidence, and should be set aside for this reason. There is little doubt under the evidence that the horse was a cribber or stump sucker, and it is reasonably clear from the evidence that if this had been known to Ford, he would not have bought him at all; that such a defect, while it does not destroy the procreative power of the horse, renders him practically valueless as a stallion, for the reason that persons having mares are unwilling to breed them to a horse that is a cribber, and that it is almost impossible to keep such a horse in good order. Cribbing seems to be a habit acquired by a horse when a colt, and as Crouch & Son raised the horse they could not well have been ignorant of this defect. The proof also shows clearly that the horse

did not get colts by 75 per cent. of the mares bred to him, and that the colts he got were not all black, brown or bay.   The evidence is undisputed that Crouch & Son sold another stallion which. was stood at Sparta, about six miles from Ford's residence, which got a large amount of custom which he counted on.   A jury of practical men are peculiarly qualified to pass on the amount of damage which would be sustained by the breach of a warranty in matters of this sort.   They have practical knowledge of the effect of the matters proved and to what extent they would affect the value of a stallion.   There was much evidence before the jury which fully warranted their finding, and, while the evidence was conflicting, the rule is that the verdict of the jury will not be disturbed unless it is palpably against the evidence, so as to strike the mind at first blush as the result of passion or prejudice.   In view of the proof in the case, we cannot say that there is anything in the verdict to indicate passion or prejudice.   If the jury credited the proof for the defendant, their verdict was not unwarranted, and the credibility of the witnesses is peculiarly for the jury.   It is true, a letter of Ford's written in September, 1904, was silent as to some of the matters as to which he complained in the action, and that he did not then claim damages for anything near the amount that he did finally.   It is also said that it is utterly incredible that a man selling a stallion would guaranty the color of his colts, as this would depend to some extent upon the color of the mare; but the incredibility of the defendant's version of the contract, and the fact that he had not in his letter claimed all the damages that he did when sued, went simply to the credibility of the witness, and was for the jury.   It may be that what the parties meant was that the horse would sire black,

brown, or bay colts where the color of the colt was not due to the color of the mare. In other words, it is probable that they meant when they agreed that he would sire black, brown or bay colts, that this would be the color of the colts in so far as they got their color from him. But, however this may be, the jury were especially qualified to pass upon such a question. The contract was made between two horsemen, and a jury of farmers would not be easily misled on such a question.

Complaint is made of the instructions of the court to the jury, but this was not relied on in the grounds for new trial in the circuit court, and cannot be considered here.

The name of the son who was a partner with his father should have been given in the pleadings, but the answer to the cross-petition was filed without exception, and, no objection having been made in the circuit court on this ground, it cannot be urged here. When Crouch & Son, filed their answer to the cross-petition without objection, all question as to the right of the defendant to assert his claim on the warranty in this action was waived. The case of Wells v. Boyd, 1 Duv., 366, has no application, because Crouch & Son here appeared without objection and took issue on the cross-petition. A litigant is not allowed to enter his appearance without objection, and, after taking his chance of getting a verdict, to raise the question that he could not properly be sued in that way when he is defeated in the action.

The contract was made before the present negotiable instruments act was passed, and is governed by the law in force at the time the contract was made. Section 483, Ky. Stats., 1903, is in these words: "Promissory notes payable to any person or to a corporation, and payable and negotiable at any bank

incorporated under any law of this commonwealth, or organized in this commonwealth under any law of the United States, which shall be endorsed to, and discounted by, the bank at which the same is payable, or by any other of the banks of this commonwealth, as above specified, shall, be, and they are hereby, placed on the same footing as foreign bills of exchange.'' The note was payable at an incorporated bank in this State. It was discounted by a national bank in Indiana, and not by a bank in this State. It is insisted that national banks are all on an equality, and that they are entitled to all the privileges of the most favored banks organized under the laws of the State. If the note had been discounted by an incorporated bank in this State it would, under the statute, have been put on the footing of a bill of exchange, and it is insisted that, in so far as the statute denies this privilege to a national bank in another state, it is in conflict with the federal statute. The contrary was held in Richmond Nat. Bk. v. Coons, 8 Ky. Law Rep. 159, and Monarch v. First Nat. Bk., 105 Ky. 336, 49 S. W. 32, 20 Ky. Law Rep. 1788. See, also, 21 Am. and Eng. Ency, of Law, 328; Thomas v. Farmer's Bank, 46 Md., 43; Hawley v. Hurd, 72 Vt., 122, 52 L. R. A., 195, 82 Am. St. Rep., 922; State v. First National Bank, 2 S. D., 568, 51 N. W., 587.

Article 4, section 2, of the United States Constitution, provides that the citizens of each state shall be entitled to all the privileges and immunities of citizens of the several states. But corporations are not citizens within the meaning of this provision. Paul v. Virginia, 8 Wall., 168, 19 L. Ed., 357. Section 1 of the fourteenth amendment provides that no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, but a corporation is not a citizen within the

meaning of this provision. Orient Insurance Company v. Daggs, 172 U. S., 557, 19 Sup. Ct., 281, 43 L. Ed., 552. This section also provides that no state shall deny to any person within its jurisdiction the equal protection of its laws, but this provision relates only to persons within its jurisdiction. A foreign corporation which is not subject to process issuing from the courts of the State is not within its jurisdiction. Blake v. McClung, 172 U. S., 239, 19 Sup. Ct., 165, 43 L. Ed., 432. As regards the construction of contracts, the transfer of property, the collection of debts, and the liability to suit, national banks are subject to the control of the state where they are situated. First National Bank v. Kentucky, 76 U, S., 353, 19 L. Ed., 701. A nonresident corporation cannot demand rights which are accorded not to the citizens of the State, but only to incorporated banks resident in the State.

Section 478, Ky. Stats., 1903, violates no rights secured to national banks by the acts of Congress. It defines what shall be considered commercial paper in the State. All persons who deal in notes executed in this State, no matter where they reside, take them subject to the laws of the State. The purpose of the statute is that paper discounted as provided by it shall pass from hand to hand, and thus augment the volume of circulating medium in the State. The indorsers are liable to subsequent holders, and the purpose of the statute would be entirely defeated if an indorsement to a nonresident of the State, who could not be reached in the courts of this State, was held to be sufficient under it. The statute is not primarily for the benefit of the banks, but for the benefit of the people of the State. The State has the power to declare what paper may be assignable,

and what defenses may be made against the paper in the hands of the assignee.

Judgment affirmed.